UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

THE FIREHOUSE CHURCH                                              PLAINTIFF
MINISTRIES

V.                                            CIVIL ACTION NO. 3:20-CV-354-KHJ-FKB

CHURCH MUTUAL                                                    DEFENDANT
INSURANCE COMPANY

ORDER

Before the Court is Defendant Church Mutual Insurance Company's ("CMIC") Motion to Exclude the Expert Testimony of Plaintiff's Engineer Nathan Carter [57]; Motion for Summary Judgment [50]; and Motion for Partial Summary Judgment [58]. For the following reasons, the Court grants the Motion for Partial Summary Judgment [58], but denies the Motion to Exclude [57] and the Motion for Summary Judgment [50].

I. Facts and Procedural History

This case arises from a coverage dispute about whether Plaintiff The Firehouse Church Ministries' roof truss, a framework supporting a roof, collapsed because of deterioration over time or a nearby tornado. CMIC issued Firehouse Church an insurance policy, which covers damage from fire, lightning, and windstorm, among other things. Pl.'s Compl. [1-2] ¶¶ 5, 6; Ins. Policy [50-1].

In April 2018, a tornado passed through Meridian, Mississippi, where Firehouse Church is located. *Id.* ¶ 5. Firehouse Church claims that before the

tornado's impact, the church was clean and in orderly condition. Serrena Irby Depo. [64-7] at 31:24–25; Scotty Cole Depo. [64-6] at 70:24–25, 71:1. The parties agree that when church officials returned the next day, there was debris and wreckage, including tin, insulation, dust, plaster, and ceiling tile, on the floor. Def'.s Memo in Support of Mot. for Summ. J. [56] at 2; Pl.'s Resp. [64] at 2. According to Pastor Scotty Cole, he and Courtney Knox, a deacon, used a ladder to inspect behind the dropped ceiling because they noticed it falling in and at an angle. [64-6] at 35:12–24. Once they crawled up the ladder, they discovered that the original ceiling was damaged, and the truss was coming through it. *Id.* at 36:1–2; Courtney Knox [64-8] at 34:11–17. Deacon Knox testified that the framing of the ceiling had never been damaged before the tornado. [64-8] at 27:6–7. She also had to secure a portion of the outside metal roof because it was "flapping." [64-6] at 44:23–25, 45:1–3.

A week after the tornado, Firehouse Church hired a contractor, Gregory Blanchard, to look at the roof truss. *Id.* at 36:7–9. Blanchard removed the dropped ceiling tiles, removed part of the original ceiling, and added posts to support the truss. *Id.* at 37:2–12, 21–25; 38:1–4. Despite his repairs, Blanchard notified Firehouse Church that the damage was worse than expected and it could not be repaired easily. *Id.* at 39:5–8.

Soon after, Firehouse Church filed a claim with CMIC under its policy. [56] at 2. CMIC retained Jason Grover, who inspected the property in May 2018 and issued an expert report. Grover Report May 2018 [50-5]. Grover determined that the wind pressures during the tornado "were not of sufficient magnitude to cause structural

damage" to the property. *Id.* at 6. Ultimately, he concluded that the bending of the roof and ceiling "and the cracking of several wood members of the roof trusses were the result of a progressive failure of the main center roof truss and the supporting wall that was caused by the as-built configuration of the building framing and trusses." *Id.* at 3. Based on Grover's findings, CMIC denied coverage. [56] at 3; *see* Coverage Report [50-6].

Firehouse Church then retained Nathan Carter, who inspected the property in June 2018 and issued an expert report. *See* [50-7]. Unlike Grover, though, Carter determined that "[t]he effect of the tornado is the only logical impact load" on the property. *Id.* at 3. CMIC claims both Carter and Grover's observations are "strikingly similar" despite reaching different conclusions about the cause of the roof truss failure. [56] at 3–4. In August 2019, Grover revisited the property and issued a supplemental report, confirming his original conclusion that deterioration caused the truss to fail. Grover Report August 2019 [64-4] at 5.

Because CMIC denied coverage, Firehouse Church sued, alleging bad-faith failure to investigate, gross negligence, bad-faith failure to pay, and breach of contract. [1-2] at 2–3. While litigation was pending, CMIC retained another individual, Ashley Carden, to inspect the property. [64] at 4. He concluded that the structural damage existed before the April 2018 tornado. Carden Report [50-10].

CMIC concurrently filed its Motion to Exclude [57], Motion for Summary Judgment [50], and Motion for Partial Summary Judgment [58]. The Court addresses each motion in turn.

II.   Motion to Exclude [57]

CMIC moves to exclude Nathan Carter's testimony under Federal Rule of Evidence 702. [57].

    a. Standard

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the standards in *Daubert v. Merrell Dow Pharmacy, Inc.*, 509 U.S. 579 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 "assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). For an opinion to be reliable, it must "be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief." *Id.* (alteration in original). An opinion is relevant where "the expert's reasoning or methodology can be properly applied to the facts in issue." *Id.*

4

(internal quotations omitted). The burden of proof rests on the party seeking to admit the expert. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Ultimately, the Court must find "an adequate fit between the data and the opinion proffered." *Brown v. Ill. Cent. R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013) (quotation omitted). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires [the Court] to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. [The C]ourt may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

  b. Analysis

CMIC argues that Carter's testimony lacks sufficient facts and data and does not meet Rule 702's reliability requirement. [53] at 10. In particular, CMIC challenges the reliability of three assumptions underlying Carter's conclusion that the tornado damaged the truss: "(1) that winds from an EF0 tornado were sufficient to destroy the roof truss and structure; (2) that the observed damage occurred at the time of the tornado; and (3) that the shoring Mr. Carter saw under the truss was placed there after the tornado, rather than before." *Id.* at 11. CMIC also characterizes Carter's testimony as "a classic example of an expert's *ipse dixit*." *Id.* at 17.

Firehouse Church responds that Carter's conclusions and opinions "are well supported through his observations, analysis, education, knowledge and experience" and are therefore reliable under Rule 702 and *Daubert*. Pl.'s Resp. [62] at 7. Carter

testified that he personally saw the property six weeks after the tornado. Carter Depo. [62-5] at 105:1–10. He also testified that he has dealt with "quite a few" tornados during his engineering career, [62-5] at 64:6–7, and based his opinions and conclusions on his "education, knowledge, and experience" in engineering, *id.* at 124:20–21; 150:4–6. As to the wind speed, Carter relied on public data from the National Oceanic and Atmospheric Administration ("NOAA") website and his experience and education about wind. *Id.* at 65:13–14; 66:2–3.

The Court finds that CMIC's objections go to the weight and credibility of Carter's testimony rather than its admissibility. Put another way, the objections go to the bases and sources of Carter's opinions. While the Court "must ensure expert witnesses have employed reliable principles and methods in reaching their conclusions," it does not judge the proposed expert's conclusions. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996). That said, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility and should be left for the jury's consideration." *Id.* at 1077 (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). The Court finds that Carter's opinions are based on data, education, experience, and personal observation of the property that he believed

were consistent with the data. The Court therefore concludes that Carter's testimony is reliable and CMIC's motion to exclude is denied.

### III. Motion for Summary Judgment [50] and Partial Motion for Summary Judgment [58]

CMIC moves for summary judgment, arguing it did not breach the insurance contract. [50] ¶ 1. CMIC also moves for partial summary judgment, seeking dismissal of Firehouse Church's bad faith and gross negligence claims. [58] at 1.

#### a. Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the applicable substantive law, 'its resolution could affect the outcome of the action.'" *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)). "An issue is 'genuine' if 'the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A party seeking to avoid summary judgment must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). This party must present more than "speculation, improbable inferences, or unsubstantiated assertions." *Jones*, 936 F.3d at 321 (quoting *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015)). In analyzing a motion for summary judgment, the Court does not "weigh the evidence and determine the truth of the

7

matter," *Klocke v. Watson*, 936 F.3d 240, 246 (5th Cir. 2019) (quoting *Anderson,* 477 U.S. at 249), but only decides whether there is a genuine issue for trial when viewing the evidence in the light most favorable to the party opposing summary judgment. *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013).

    b. Analysis

        i. Motion for Summary Judgment [50]

CMIC moves for summary judgment, asserting that it did not breach the contract. [50] ¶ 1. From that, CMIC argues that Firehouse Church's bad faith and gross negligence claims fail as a matter of law. *Id.*

In Mississippi, "[a] breach-of-contract case has two elements: (1) the existence of a valid and binding contract; and (2) a showing that the defendant has broken, or breached it." *Maness v. K & A Enters. of Miss.*, LLC, 250 So. 3d 402, 415 (Miss. 2018) (quoting *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224 (Miss. 2012) (internal quotations omitted)). "A breach is material where there is 'a failure to perform a substantial part of the contract or one or more of its essential terms or conditions, or if there is such a breach as substantially defeats [the purpose of the contract].'" *Ferrara v. Walters*, 919 So. 2d 876, 886 (Miss. 2005) (citation omitted).

The parties do not dispute that a valid and binding contract existed between them; however, they dispute whether CMIC has breached it. Def.'s Memo in Support of Mot. for Summ. J. [56] at 6. CMIC argues that Carter's—Firehouse Church's expert—testimony and opinion are unreliable. *Id.* at 5–6. CMIC contends that the Court can disregard his opinion in deciding whether a party has created a

genuine issue of material fact, leaving the opinions of the engineers retained by CMIC uncontroverted. *Id.* at 6. Both CMIC's engineers, Grover and Carden, concluded that the roof truss failed due to long-term deterioration. *Id.* Because property damage caused by long-term deterioration is not covered by the contract, CMIC insists that it did not breach the insurance contract and Firehouse Church cannot establish a prima facie case for this claim. *Id.* Firehouse Church, on the other hand, argues that Carter's opinions and conclusions are reliable, as discussed *supra* II.b, and therefore CMIC's denial of coverage despite windstorm damage breached the contract. Pl.'s Resp. [64] at 6.

As the Court has already held, Carter's testimony is reliable. To that end, the Court considers Carter's testimony and opinion in deciding this motion. After review of the record, the Court finds that a genuine issue of material facts exists as to whether CMIC breached the insurance contract. The expert reports supply differing opinions about what caused the truss to collapse — a material fact needed to decide whether coverage was warranted. *See* [64-2]; [64-3]; [64-4]; [50-10]. Further review of the record confirms that a reasonable jury could decide that the roof truss failed due to the tornado and find for Firehouse Church as the nonmoving party. CMIC's motion for summary judgment is denied.

    ii.  Motion for Partial Summary Judgment [58]

CMIC also moves for partial summary judgment, seeking dismissal of Firehouse Church's bad-faith claims. Firehouse Church alleges bad-faith failure to investigate and bad-faith failure to pay claims. [1-2] at 2.

Under Mississippi law, to recover punitive damages for bad faith, Firehouse Church must show that CMIC denied its claim "(1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 873 (5th Cir. 1991) (citations omitted). CMIC, on the other hand, need only show that it has "reasonable justifications, either in fact or law, to deny payment." *Id.* Whether CMIC had an arguable reason to deny coverage is a question of law. *Id.*

Mississippi courts apply the directed verdict test to determine whether an insurer had an arguable basis to deny coverage. *Id.* This test directs that "unless the insured would be entitled to a directed verdict on the underlying insurance claim, an arguable reason to deny an insurance claim exists in most instances." *Id.* (citing *Blue Cross & Blue Shield v. Campbell*, 466 So. 2d 833, 843 (Miss. 1984)).

Firehouse Church bears the burden of showing that CMIC had no arguable basis for denying coverage. *Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092, 1097 (Miss. 1996). Firehouse Church argues that the facts and record support such conclusion. Pl's Resp. in Opp. to Mot. for Part. Summ. J. [63] at 9. Namely, Firehouse Church contends it is "straightforwardly apparent" that the tornado damaged the property. *Id.* Firehouse Church points to the depositions of various witnesses to support its argument. For example, one of Firehouse Church's custodial employees testified that the church building was in orderly condition before the tornado. Serrena Irby Depo. [63-10] at 26:25–27:3; 31:20–25. But after the tornado, the building was in disarray with debris and wreckage, including ceiling tiles, littering the floor. *See*

10

Courtney Knox Depo. [63-11] at 27:2–14; [63-10] at 18:1–14; 23:2–5. The ceiling's insulation was also exposed, and a ceiling joist had collapsed, hitting the metal framing of the dropped ceiling. [63-10] at 23:2–9; [63-11] at 34:1–17. According to a Firehouse Church deacon, the ceiling framing had not been damaged before the tornado and there was no debris before the storm as well. [63-11] at 27:1–7. From this, Firehouse Church concludes that "it is apparent that the tornado impacted and damaged the building" and "it does not require an expert" to conclude such. [63] at 10.

But CMIC insists that it had an arguable reason to deny coverage because it relied on its retained expert to do so. Def.'s Memo in Support of Part. Mot. for Summ. J. [55] at 8. Firehouse Church counters that CMIC's reliance on its expert does not exempt it from the duty to realistically evaluate the claim. [63] at 6.

The Court finds that CMIC had an arguable basis to deny payment. Although Firehouse Church provided evidence that wind might have damaged the property, CMIC had an arguable reason for denial of payment based on its engineer's conclusion. Grover, after personally seeing and examining the property, concluded that long-term deterioration of the roof truss damaged the building. *See* [63-1] at 3; *Hans Constr. Co. v. Phoenix Assurance Co.*, 995 F.2d 53, 55 (5th Cir. 1993) (an insurer's reliance on an independent expert provides, "at the very least, an arguable basis for denying [a] claim.").

The record also reflects that CMIC realistically evaluated the claim despite Firehouse Church's argument to the contrary. Grover returned to the property after

his initial inspection and issued a supplemental report. *See* [68-2]. CMIC also retained another individual, Carden, to inspect the property and issue a report during pendency of this suit. *See* [68-3]. CMIC has satisfied its duty of investigating all relevant information and made a realistic evaluation of the claim. *See Lewis v. Equity Nat'l Life Ins. Co.*, 637 So. 2d 183, 187 (Miss. 1994).

Ultimately, CMIC acted on a reasonable belief that there was no coverage because the tornado did not proximately damage the property. And again, CMIC need only show a reasonable justification, whether in fact or law, to deny coverage. *See Dunn*, 927 F.2d at 873. The Court finds that Firehouse Church has not met its burden of showing that CMIC had no arguable basis to deny payment, and thus it cannot recover punitive damages for its bad-faith claims. But the Court notes, without deciding, that this does not necessarily preclude liability for consequential or extra-contractual damages. *See Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1186 n. 13 (Miss. 1990).

Even if Firehouse Church met its burden of establishing that CMIC had no arguable reason to deny payment, the Court finds CMIC did not act with sufficient "malice or gross negligence" to warrant punitive damages. Firehouse Church contends that CMIC's awareness of the tornado and damage, along with its past and present refusal to provide coverage demonstrates malice or gross negligence in disregard of its rights. [63] at 12. Nothing in the record supports Firehouse Church's argument that CMIC acted with malice or gross negligence. Instead, the record makes clear that CMIC sent an engineer to personally observe and examine

the property, who later issued a report detailing his findings. *See* [63-1]. After receiving Grover's determination that wind did not cause the damage, CMIC denied coverage. *See* [63-2] at 1. CMIC provided a letter to Firehouse Church, explaining why it denied coverage based on Grover's assessment. *See id.* Grover also inspected the property again and issued a supplemental report after CMIC denied coverage. *See* [68-2]. Lastly, CMIC retained Carden to inspect the property and issue a report while this suit was pending. *See* [68-3]. Based on this, the Court is not persuaded that CMIC acted with malice or gross negligence to warrant punitive damages, even if CMIC did not have an arguable reason to deny payment.

IV. Conclusion

The Court has considered all arguments. Those the Court does not address would not have changed the outcome. For the reasons stated, the Court GRANTS Defendant CMIC's Motion for Partial Summary Judgment [58], and DENIES its Motion to Exclude the Expert Testimony of Plaintiff's Engineer Nathan Carter [57]; and Motion for Summary Judgment [50].

SO ORDERED AND ADJUDGED this the 25th day of March, 2022.

s/ *Kristi H. Johnson*<br>UNITED STATES DISTRICT JUDGE